## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

DF INSTITUTE, INC.,
d/b/a Kaplan Professional Schools,

                    Plaintiff,

v.                                          ORDER
                                            Civil File No. 07-1348 (MJD/AJB)

MARKETSHARE EDS, and PEGGY L.
MCNAMARA,

                    Defendants.

---

Rita O'Keeffe, Kevin D. Conneely, & Monica Davies, Leonard Street & Deinard, PA, and Jonathan Zavin, Loeb & Loeb, LLP, Counsel for Plaintiff.

Kathryn J. Bergstrom & Laura J. Hein, Gray Plant Mooty Mooty & Bennett, PA, Counsel for Defendants.

---

## I.    INTRODUCTION

This case is currently before the Court on Plaintiff's Motion for a Preliminary Injunction.  [Doc. No. 6.]  Oral argument was heard May 11, 2007, and, with the Court's permission, Plaintiff filed a post-hearing letter brief on May 15, 2007.

Plaintiff DFI, doing business as Kaplan Professional Schools ("Kaplan"), prepares applicants to take the Minnesota real estate salesperson exam.  As part of its course, Kaplan provides textbooks to its students entitled <u>Principles of</u>

1

Minnesota Real Estate ("Principles") and Practices of Minnesota Real Estate ("Practices").  Kaplan asserts that Defendants (collectively "Marketshare") created their own real estate exam prep course using copyrighted materials contained in Principles and Practices.  Kaplan sued Marketshare for copyright infringement, and now seeks a preliminary injunction to enjoin Marketshare from using allegedly infringing materials during the pendency of this lawsuit.

## II.    FACTUAL BACKGROUND

The Minnesota Department of Commerce regulates realtors in the state.  To obtain a real estate license, applicants must attend 90 hours of approved education from a state approved provider, pass the real estate license exam, and apply in writing to the Department of Commerce.  The 90 hours of education is divided into three courses, and candidates are eligible to take the license exam upon completion of Course I (basics of real estate law).  Only after applicants also complete Courses II and III, which cover the business side of being a realtor, may they apply for their real estate licenses.  Minn. R. 8209.0200 sets forth a detailed outline of the subjects that must be covered in the three real estate salesperson exam prep courses.

In 1979, Rick Larson founded a prep course for people wanting to take the Minnesota real estate salesperson exam.  In 2005, that company merged into DF

Institute, and now does business as Kaplan.  Larson has been in the real estate business for over 35 years, and is the author of <u>Principles</u> and <u>Practices</u>.

<u>Principles</u> and <u>Practices</u> cover all the subjects tested on the Minnesota real estate salesperson exam and are updated as necessary.  The copyright registration for the fourth edition of <u>Principles</u> was effective January 11, 2007, and the copyright registration for the third edition of <u>Practices</u> was effective January 17, 2007.

<u>Principles</u> is used in Kaplan's Course I classes, and <u>Practices</u> is used in Kaplan's Course II and Course III classes.  The books are included in the cost of attending Kaplan's prep classes.  In addition, both books are sold as textbooks to colleges and universities that offer classes in real estate such as Hennepin County Technical College and St. Cloud State University.

On November 26, 2006, Defendant Peggy McNamara and Marketshare received approval from the Minnesota Department of Commerce to coordinate and teach real estate exam prep courses.  On January 5 and 9, 2007, the Department granted Marketshare approval to teach Courses I, II, and III. McNamara is the founder and president of Marketshare, and is familiar with Kaplan's products because she took Kaplan's Real Estate License Exam Preparation Course in March 2006, and also attended "Stand-up and Speak," a lecture given by Larson for Kaplan students interested in training to teach Kaplan's real estate

salesperson courses.  McNamara attended this lecture at the invitation of Toby

Schifsky, a Kaplan representative who was discussing with McNamara the

possibility of McNamara teaching for Kaplan.  McNamara eventually turned down

Kaplan's teaching offer.  Larson previously knew McNamara because he dealt with

her in her role as training director for Burnet Realty.

In October 2006, Larson learned that McNamara intended to start a real

estate licensing salesperson course.  At that time, Larson asked McNamara what

training materials she planned to use, and McNamara said that she had created

her own course materials.

In November 2006, Kaplan discovered that Marketshare's website copied

Kaplan's website.  Kaplan's general counsel sent McNamara a cease and desist

letter.  McNamara responded by stating that she had changed her website and

"there [would] be no further issues to discuss."  (O'Keefe Aff.  Ex. E.)  However,

when Kaplan received copies of Marketshare's materials from someone who

attended Marketshare's January 8, 2007 class, Kaplan discovered that

Marketshare's materials contained "substantial amounts of expression" from

Principles and "portions of expression" from Practices.  (Larson Aff. ¶ 28.)  This

lawsuit followed on February 27, 2007.  Shortly after this suit was filed, Kaplan

wrote Marketshare a letter asking it to cease and desist its allegedly infringing

conduct.  However, Kaplan has since obtained copies of Marketshare's course

4

materials for the Marketshare course that began on March 5, 2007 and, according

to Kaplan, the materials contain "substantial amounts of expression" from

Principles and "portions of expression" from Practices.

Kaplan avers that there is "overall similarity" between Marketshare's

materials and Principles. According to Kaplan,

> [1] Both Marketshare's course materials and [Principles] . . . are
> intended for students intending to become Minnesota real estate
> salespersons.
> [2] Both works are divided into ten chapters.
> [3] Each chapter of Marketshare's materials covers approximately the
> same subject matter as the corresponding chapter of Principles.
> [4] Marketshare's materials and Principles . . . both contain sections
> of mock examination questions and a corresponding section of
> "rationales" that explain the correct answer for each mock exam
> question.
> [5] While[] the State of Minnesota does not require that approved
> real estate salesperson exam courses cover "real estate math," both
> Marketshare's materials and Principles . . . have a chapter addressed
> to "real estate math."

(Pl. Mem. Supp. Mot. Prelim. Inj. at 7) (internal citations omitted).

Marketshare originally responded that McNamara authored the material at

issue, and that only 7% of Marketshare's Course I materials consisted of allegedly

infringing material. Moreover, Marketshare argues that to comply with

Department of Commerce requirements, all courses must contain certain

information, including "industry terminology" such as the measurements of a

square mile or acre. In addition, Marketshare takes issue with Kaplan's insistence

that Marketshare's use of statues and rules or "real estate truisms" constitutes copyright infringement.

After this motion was filed, but prior to oral argument, Marketshare voluntarily changed several of its allegedly infringing materials so that they now contain only 4% allegedly infringing material.  The Court gave Kaplan time to respond to these changes, and the Court is in receipt of Kaplan's letter brief on the subject.

In addition, at oral argument, Kaplan expressed concern that Marketshare may be engaging in additional infringement in its Course II and Course III materials.  Kaplan has provided the Court with two allegedly infringing examples taken from Marketshare's Course II materials.

## III.    DISCUSSION

Kaplan seeks a preliminary injunction ordering the following:

enjoining and restraining Defendants, their officers, agents, servants, attorneys, and employees, and all those in active concert or participation with Defendants, from using, publicly displaying, selling or otherwise distributing any materials that contain content and expression that is the same as, substantially similar to, or an otherwise unlawful copy or derivative work created from, any or all editions of Principles of Minnesota Real Estate and Practices of Minnesota Real Estate.

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions.  Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d

6

109, 113 (8th Cir. 1981) (en banc).  This Court must consider (1) the probability that the moving party will succeed on the merits, (2) the threat of irreparable harm to the moving party if an injunction is not granted, (3) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, and (4) the public interest.  Id.  "The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability [of success on the merits] test."  Id. at 113. The question is whether "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Id. at 113 n.5.  A preliminary injunction is an extraordinary measure, and the burden is on the movant to prove the propriety of an injunction. See Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).

### A.     Likelihood of Success on the Merits

While all Dataphase factors must be considered, the likelihood of success on the merits predominates the analysis.  Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc., 114 F. Supp. 2d 856, 863 (D. Minn. 2000).  A party may obtain copyright protection for "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  Facts, however, are not subject to copyright protection.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,499 U.S. 340, 356 (1991)(citing 17 U.S.C. § 102(b)).  "In no case does copyright protection for

an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

"The sine qua non of copyright is originality." Feist, 499 U.S. at 345 (emphasis omitted). "Original, as the term is used in copyright, means only that the work was independently created . . . and that it possesses at least some minimal degree of creativity." Id. Because the "originality" standard is easily met, there is a "narrow category of works" that are incapable of sustaining a valid copyright. Id. at 359.

Compilations may be entitled to copyright protection. 17 U.S.C. § 103(a). However, as copyright protection does not extend to the facts contained in a compilation, copyright protection for such compilations is "thin." Feist, 499 U.S. at 349 (finding information contained in telephone directories not protected). Facts include laws and regulations. See Veeck v. Southern Bld'g Code Cong. Int'l, Inc., 293 F.3d 791, 801 (5th Cir. 2002).

Copyright infringement can occur even if the percentage of material infringed upon is low, if that copied material represents the core of the protected material. Harper & Row, Publ., Inc. v. Nation Enter., 471 U.S. 539, 565 (1985) (finding that magazine's publication of "an insubstantial portion" of unpublished

book was not a fair use under the Copyright Act because the published portion represented the "heart of the book").

Courts have held that exam prep materials and practice exam questions can be protected expression even though they are based on underlying unprotected facts.  See Mulcahy v. Cheetah Learning, LLC, 386 F.3d 849, 854 (8th Cir. 2004) (reversing grant of summary judgment to defendants because the subject project manager training and exam prep book might be "an original work intended to transform project management into a recognized profession, rather than a mere compilation of well-known facts and ideas," and as such would represent "more protectable originality" than mere tables of public information).  See also Educational Testing Servs. v. Katzman, 793 F.2d 533, 540 (3d Cir. 1986) (finding that there are multiple ways to create test questions that test knowledge of "square roots or dangling participles" such that questions testing this knowledge were protected under copyright law); National Conf. Bar Exam'rs v. Multistate Legal Studies, Inc., 458 F. Supp. 2d 252, 259 (E.D. Penn. 2006) (finding that Multistate Bar Exam questions may reflect original expression in their word choices, fact patterns, and answers even though they test knowledge of established legal rules); Educational Testing Servs. v. Simon, 95 F. Supp. 2d 1081, 1090 (C.D. Ca. 1999) (finding that a test prep company could create sample questions testing the concepts contained in the actual copyrighted test questions

without violating copyright law, but could not copy actual test questions);

Association of Am. Med. Colls. v. Mikaelian, 571 F. Supp. 144, 150 (E.D. Penn

1983) (holding that MCAT questions are the result of original work and the "mere

fact that MCAT questions refer to scientific fact does not place these questions in

the public domain"). Moreover, when the only way a defendant can "avoid[] any

'similarity' or 'correspondence,' . . . [is] to avoid the subject then at hand all

together," there is no infringement. Morrison v. Solomons, 494 F. Supp. 218,

222-23 (S.D.N.Y. 1980) (finding that most of the allegedly infringing material in a

chemistry text book consisted of unprotected ideas or information).

Although percentage comparisons can sometimes indicate that there is no

infringement, Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 729-30 (8th Cir.

2002), "no plagiarist can excuse the wrong by showing how much of his work he

did not pirate." Harper & Row, 471 U.S. at 565 (quoting Sheldon v. Metro-

Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936)).

To prevail on a claim of copyright infringement, Kaplan must prove: (1)

copyright ownership in the books; and (2) "copying of constituent elements of the

[books] that are original." Feist, 499 U.S. at 361. There is no dispute as to the

first factor. The only question remaining is whether Marketshare copied anything

that was original to Kaplan.

A plaintiff may prevail on a claim of infringement not only with direct evidence of copying, but also or by proving that defendants had access to the copyrighted works and that there is a substantial similarity between the copyrighted works and the defendant's works.  <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 403 F.3d 958, 964 (8th Cir. 2005).  In this case, there is no dispute that McNamara had access to Kaplan's copyrighted work.  Thus, the Court must examine whether there is substantial similarity between the two works.

 There is a two step analysis adopted by the Eighth Circuit to determine whether a work is substantially similar.  The first step requires the Court to analyze the similarity of ideas extrinsically, focusing on objective similarities of the works.  <u>Schoolhouse</u>, 275 F.3d at 729 (citing <u>Hartman v. Hallmark Cards, Inc.</u>, 833 F.2d 117, 120 (8th Cir. 1987)).

Kaplan argues that an extrinsic examination of the materials shows that they have the same objective similarities: (1) both are training materials for the Minnesota real estate exam handed out in conjunction with live instruction, (2) both training materials use a combination of tests, examples, charts, mock exam questions, and rationales (correct answer explanations) to impart information; and (3) each chapter follows the same chronology and each corresponding chapter or unit covers the same topic.  Thus, according to Kaplan, Marketshare

uses "similar ideas, themes, and techniques" to Kaplan's work that satisfy the extrinsic focus analysis.  (Pl. Mem. Supp. Mot. Prelim. Inj. at 13.)

Marketshare agrees that both sets of materials prepare students for the real estate exam and are divided into ten chapters that address the subjects mandated by Minn. R. 2809.0200.  Both courses cover all these topics in addition to "real estate math."  Thus, the two sets of materials are extrinsically similar.  Therefore, the first part of the two-part test is satisfied.

Regarding the second part, the Court must decide if an ordinary person would find the two sets of materials substantially similar.  "If the ideas behind the works are substantially similar, [the court] must then evaluate similarity of expression intrinsically, according to the response of the ordinary, reasonable person."  Schoolhouse, 275 F.3d at 729.  An appropriate measure of substantial similarity is the ratio of the materials the two works have in common versus the total number of materials in Kaplan's work.  Id. at 729-30.  The Court must consider "whether the accused work has captured the total concept and feel of the copyrighted work."  Taylor Corp. v. Four Seasons Greetings, LLS, 171 F. Supp. 2d 970, 976 (D. Minn. 2001) (quotation omitted).  "[I]t is the presence of substantial similarities rather than differences which determines whether infringement exists."  Id.  Differences in detail do not defeat a finding of substantial similarity if the "overwhelming impression" is that the allegedly infringing material is an

appropriation.  <u>Taylor</u>, 403 F.3d at 966 (finding similarities in greeting cards gave the impression that defendant's cards were appropriations of plaintiff's cards). However, "[s]imilarity in expression cannot be used to show copyright infringement when there is only one way or only a few ways of expressing an idea."  <u>Schoolhouse</u>, 275 F.3d at 730 (finding that similarities in covered topics and resulting lists between school information publication and school information website did not constitute infringement because there was nothing original in plaintiff's selection of topics covered in its publication).

Kaplan argues that although there is not total similarity, the similarities between the two sets of materials are obvious to the ordinary reasonable person. Kaplan proffers several exhibits that it avers contain entire sections that are either copied directly from <u>Principles</u> or that are "highly similar" to <u>Principles</u>.

The Court has conducted a thorough review of Kaplan's exhibits, and finds that Marketshare's changes corrected the materials that were most obviously infringing.  Although given the opportunity to explain what, if any, infringing material still remains in these exhibits after Marketshare's changes, Kaplan failed to do so in it post-hearing letter brief.  Kaplan stated only that "[i]t appears that in the revised materials, Marketshare has removed the most clearly infringing materials, while leaving in those materials [things] that[,] while clearly copied from Kaplan's materials, Marketshare believes are less obviously infringing."

(Doc. No. 24 at 1.)   However, Kaplan has not stated what materials still allegedly infringe its copyrights.   Thus, Kaplan has not met its burden to demonstrate that a preliminary injunction is necessary based on any of Marketshare's revised materials.   See Watkins, 346 F.3d at 844 (burden is on movant to prove the propriety of a preliminary injunction).   Therefore, the Court will not consider these materials in the following analysis.

Regarding the remaining materials, the Court finds that most of the remaining exhibits contain generic information that students must know to pass the real estate exam.   For example, as Marketshare noted at oral argument, Exhibit D-2 merely contains a restatement of pertinent statutory language.[1]   This is just a fact that is not entitled to copyright protection.   Exhibits E and F contain examples of math calculations and some definitions.   Formulas for converting fractions and percentages into decimals and for converting various land measurements are not protected.   This is the type of information that is contained in dozens of elementary school math texts.   Furthermore, this factual information is not presented in any creative way that warrants protection.   See Feist, 499 U.S. at 349; Schoolhouse, 275 F.3d at 730.

To the extent the math conversion questions and examples are presented in the form of hypothetical problems, Marketshare's problems do not infringe.   It

---

[1] In this section, all cites to Exhibits refer to exhibits to Rick Larson's affidavit.

14

only makes sense that students need to know such things as how to calculate a

total sale price when they are given the amount of money a seller received and

the percentage of the total sale price represented by that amount of money; how

to calculate prorated rent or the debits to sellers at closing; and how to calculate a

total mortgage amount given a down payment and the percentage of the total

mortgage the down payment represents.  None of Kaplan's hypothetical problems

is so unique or creative that merely creating a new problem that teaches the same

ideas constitutes infringement.  To that end, the Court notes that none of

Marketshare's problems are verbatim copies of Kaplan's problems.  All the

problems use different numbers and percentages.  Thus it is only the ideas that

are the same, and ideas are not protected.  17 U.S.C. § 102(a).  Hypothetical

questions must contain facts and figures necessary to conduct the proper analyses.

These mathematical word problems simply represent the types of situations in

which the need for various calculations will arise.  The Court can conceive of no

other way that Kaplan, Marketshare, or any other entity could disseminate this

information to students or test their knowledge other than using hypothetical

word problems.  Thus, the materials contained in Exhibits E and F do not support

a finding of copyright infringement.  See Schoolhouse, 275 F.3d at 730.

Exhibits H through J contain examples of definitions from both Parties'

materials.  The Court finds that these materials merely restate common definitions

15

of legal terms and real estate terms of art.  Some of these definitions are complete definitions and some are in the form of fill-in-the-blank questions or fill-in-the-answer questions.  These are facts that are not entitled to copyright protection.  Again, these materials are necessary for any student studying for the real estate exam, and the Court does not find Kaplan's presentation unique.  Thus, these exhibits do not support a finding of copyright infringement.

Exhibit K contains side-by-side comparisons of hypothetical multiple-choice test questions.  Each question has four answers, and students must choose the correct answer from the choices.  Many of Kaplan's questions and answers demonstrate creativity that must be protected.  First, although the majority of Kaplan's questions test only generic legal and mathematical information and are phrased in ways that do not demonstrate protectable creativity, but rather demonstrate the only way that these questions could be asked, Exhibit L-29 contains a question that may demonstrate protectable creativity that Marketshare copied verbatim except for changing the names of the people in the hypothetical problem.

Furthermore, the Court finds that several of Marketshare's multiple-choice answers also demonstrate that Marketshare may have infringed Kaplan's copyrights because Kaplan's answers likely reflect original expression.  Obviously, all multiple-choice questions must contain the correct answer, and these answers

are not creative.  However, the Court finds that the wrong answers very likely
demonstrate protectable original expression.  Given Larson's 35 years of real
estate experience, Kaplan's creation of wrong answers and red herrings may
demonstrates its knowledge about the common pitfalls and mistakes that students
often make on the real estate exam.  See Nat'l Conf. of Bar Examr's, 458 F. Supp.
2d at 259 (finding that Multistate Bar Exam questions may reflect original
expression).  Thus, to the extent Marketshare's answer choices contain more than
one answer that is the same as Kaplan's answers, these answers may infringe upon
original expression.  The offending answer choices are contained in the following
Exhibits: Ex. L-3, L-4, L-5, L-6, L-7, L-9, L-10, L-13, L-15, L-18, L-19, L-20, L-25, L-
26, L-28, L-29, L-30, L-34, L-35, L-38, L-41, L-42.

The Court finds that although the vast majority of the materials proffered
by Kaplan likely do not contain infringing materials, Kaplan has demonstrated a
likelihood of success on the merits based on Marketshare's wholesale copying and
near-copying of many of Kaplan's exam review hypothetical questions and
answers (Ex. L) which results in materials that a reasonable objective person
would likely consider substantially similar.  This part of the test is satisfied.
Accordingly, this Dataphase factor weighs in Kaplan's favor.

## B.   <u>Threat of Irreparable Harm</u>

"Once the movant has established the likelihood of success on the merits, irreparable harm is presumed." <u>West Pub. Co. v. Mead Data Central, Inc.</u>, 799 F.2d 1219, 1229 (8th Cir. 1986).  In addition, an action for an injunction does not necessarily become moot merely because the conduct complained of was terminated.  <u>Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.</u>, 83 F. Supp. 2d 1016, 1020 (D. Minn. 2000) (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167 (2000)) (holding that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" and noting that the defendant in that case had not represented that it would not halt or modify offending conduct).

Marketshare argues that Kaplan will not be irreparably harmed without an injunction because Marketshare voluntarily removed so much of the allegedly infringing material from its course materials, and that now only about 4% of its materials allegedly infringe upon Kaplan's copyrights.  Marketshare cites <u>Gregerson v. Vilana Fin., Inc.</u>, No. 06-1164 (ADM/AJB), 2006 WL 3227762 at *2 (D. Minn. Nov. 7, 2006) for the proposition that when offending material is voluntarily removed from a defendant's publications, there is no longer copyright infringement.  In <u>Gregerson</u>, the defendants sought a preliminary injunction ordering the plaintiff to stop using the plaintiff's trademarks on its website.  <u>Id.</u>

The court denied the motion because, <u>inter</u> <u>alia</u>, the plaintiff's use represented free expression, was likely a fair use, and the plaintiff had removed all inappropriate references to the marks from his website and added a disclaimer noting that comments about the plaintiff were in the nature of critical commentary.  <u>Id.</u>  However, the court promised to monitor the website for further infringement.  <u>Id.</u>

Kaplan has demonstrated a likelihood of success on the merits, thus the Court assumes it will be irreparably harmed.  In addition, Marketshare's <u>Gregerson</u> argument is misplaced.  In that case, the plaintiff had removed allegedly infringing material from its website and posted proper disclaimers that cured any infringement.  In this case, Marketshare admits that even after it changed its materials, the materials still contain 4% allegedly-infringing material.  Moreover, there is potential that without an injunction Marketshare could continue to infringe upon Kaplan's copyrights.  Kaplan asserts that since the inception of this lawsuit, Marketshare has created more allegedly infringing materials.  The materials attached to Kaplan's letter brief contain identical or nearly identical copying of words and format.  An injunction with clear parameters will help Marketshare avoid infringing in the future.

Lastly, to the extent Marketshare relies on its "4% argument" to prove that the majority of its materials are original, that argument is misplaced.  The proper

measure in these cases is not the ratio of the allegedly infringing work that is compromised of copied material, it is the ratio of the work that the copyrighted work and the infringing work have in common compared to the total of the copyrighted work.  See Schoolhouse, 275 F.3d at 729-30.  Neither Party has provided the Court with this information.

This factor weighs in Kaplan's favor.

### C.    Balance of Harms

The balance of harms between the Parties is not usually regarded as significant.  Janel Russell Designs, 114 F. Supp. 2d at 863.  However, "a willful infringer which seeks to profit by copying others' creative ideas should not be heard to complain that its interest will be disturbed by an injunction."  Taylor, 171 F. Supp. 2d at 977 (citation omitted).  Kaplan argues that the balance of harms favors it since continued infringement will cause Kaplan "profound" harm, but any harm to Marketshare will be minor.

Marketshare responds that the balance of harms analysis favors it. Specifically, since the preliminary injunction Kaplan seeks states that Marketshare cannot use any course materials that contain any allegedly infringing material, it will be effectively prevented from using any of its Course I materials.  Since Course I is the prerequisite to Course II and Course III, Marketshare argues that this injunction would effectively shut down Marketshare.

Kaplan will suffer irreparable harm if its creativity and originality are pirated. Practices and Principles are the result of years of work and the success of Kaplan's business is intertwined with the value of Practices and Principle. Thus, anything that weakens Practices hurts Kaplan. See Janel Russell Designs, 114 F. Supp. 2d at 863 (holding that when the success of plaintiff's entire business depended on protecting copyrighted material, plaintiff stood to suffer significant harm). Moreover, the harm that Marketshare fears should the Court issue an injunction will not occur since no one is asserting that Marketshare cannot teach its courses using non-infringing materials. Therefore, this factor weighs in Kaplan's favor.

### D. **Public Interest**

Kaplan argues that granting the preliminary injunction will serve the public interest by upholding copyright protections and preventing the misappropriation of protected works. Marketshare responds that there is a public interest in fair market competition.

The public has an interest in protecting valid copyrights. Taylor, 403 F.3d at 968. The public also has an interest in fair market competition. However, competition based on impermissible copyright violations is not fair. Thus, this factor weighs in Kaplan's favor.

21

E.      **Conclusion**

All the Dataphase factors weigh in favor of granting an injunction.

However, the language in Kaplan's proposed order is overbroad and seeks to

protect materials that do not represent original expression.  In addition, the

Parties are reminded that the Court may decide the ultimate issues differently

later in the litigation, when faced with a more complete picture of the case.  See

Advantage Media, L.L.C. v. City of Hopkins, 408 F. Supp. 2d 780, 796 (D. Minn.

2006) (citing Smyth v. Rivero, 282 F.3d 268, 277 (4th Cir. 2002)).  At this

juncture, however, Kaplan has demonstrated that justice requires the issuance of

an injunction to protect its copyrighted materials.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED:**

1.      Plaintiff's Motion for a Preliminary Injunction [Doc. No. 6] is

**GRANTED IN PART and DENIED IN PART**;

2.      The Motion is **GRANTED** as to an injunction and **DENIED** as to the

scope of the injunction;

3.      **Consistent with the body of this Order**, Defendants, their officers,

agents, servants, attorneys, and employees, and all those in active concert or

participation with Defendants, are enjoined and restrained from using, publicly

22

displaying, selling or otherwise distributing materials that contain content and expression that is the same as, substantially similar to, or an otherwise unlawful copy or derivative work created from any or all editions of <u>Principles of Minnesota Real Estate</u> and <u>Practices of Minnesota Real Estate</u>.


Dated: June 1, 2007

                                        <u>s /  Michael J. Davis     </u>
                                        Michael J. Davis
                                        United States District Court